**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Justin C. Bowman, | ) | CIV 14-00733-PHX-DJH (MHB) |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Charles L. Ryan, et al., | ) | |
| Respondents. | ) | |

TO THE HONORABLE DIANE J. HUMETEWA, UNITED STATES DISTRICT JUDGE:

Petitioner Justin C. Bowman, who is confined in the Arizona State Prison, Eyman Complex, Florence, Arizona, has filed a *pro se* Petition for Writ of Habeas Corpus (hereinafter "habeas petition") pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents filed an Answer on September 17, 2014 (Doc. 14). On January 14, 2015, Petitioner filed a Response to Respondents' Answer (Doc. 17).

Petitioner lists ten grounds for habeas relief, all which he claims resulted in a violation of his rights under the United States Constitution:

Ground One: Petitioner was denied his right to confront and cross-examine witnesses under the Sixth Amendment when he was precluded from cross-examining his wife Lindsey regarding previous accusations she had made against her first husband of sexual conduct with a minor.

Ground Two: Petitioner was denied his right to confront and cross-examine witnesses under the Sixth Amendment when he was precluded from cross-examining his wife Lindsey regarding her possession of methamphetamine, based upon the fact that during the execution of a search warrant on their home, methamphetamine was found in the upstairs master bedroom that Petitioner claims he was "denied access to," and the fact that Lindsey admitted to the police that "everything upstairs was hers."

Ground Three: Petitioner was denied his right to due process of law when the trial court admitted letters Petitioner had written to his wife Lindsey while he was incarcerated pending trial in which he discussed his consideration of a plea bargain, particularly in light of a juror's subsequent comment to the bailiff: "Why are we doing this if he's already pleading guilty?"

Ground Four: Petitioner was denied his right to due process when the trial court allowed the introduction of summaries of narrative stories found on Petitioner's computer describing sexual encounters between adults and children.

Ground Five: Petitioner was denied due process of law when the trial court denied his motion for a trial continuance and therefore prejudiced his right to present a defense because he "only had four months to present a defense, . . . and was denied the raw materials integral to preparing an effective defense."

Ground Six: Petitioner was denied the right to effective assistance of counsel guaranteed by the Sixth Amendment when his trial counsel was ineffective, and that forced him to choose between having ineffective counsel or no counsel because his court-appointed counsel had not prepared any defense and Petitioner was forced to represent himself.

Ground Seven: Petitioner was denied the right to effective assistance of counsel guaranteed by the Sixth Amendment when his trial counsel failed to introduce exculpatory statements made by one of the victims in a video and audio recorded interview to the effect of "I don't remember doing any of these things."

Ground Eight: Petitioner was denied the right to effective assistance of counsel guaranteed by the Sixth Amendment when trial counsel did not present a defense.

Ground Nine: Petitioner was denied the right to effective assistance of counsel guaranteed by the Sixth Amendment when his trial counsel, during his opening statement, asked the jury to find Petitioner guilty, although trial counsel immediately corrected the misstatement.

Ground Ten: Petitioner was denied the right to effective assistance of counsel guaranteed by the Sixth Amendment when his trial counsel failed to present exculpatory letters written to Petitioner by his wife Lindsey in which she "acknowledged [Petitioner]'s incarceration was her fault," claimed his incarceration was "unfair," and "declared her love for [Petitioner]."

(Doc. 1, at 4-14.)

In support of his claims, Petitioner attaches his opening appellate brief to the Arizona Court of Appeals, the April 1, 2011 memorandum decision by that Court affirming Petitioner's convictions and sentences, Petitioner's August 30, 2012 petition for post-conviction relief filed in the trial court, the trial court's November 30, 2012 decision denying post-conviction relief, Petitioner's subsequent petition for review to the Arizona Court of Appeals, the April 15, 2013 appellate court memorandum decision granting review but

1  denying relief, Petitioner's second notice of post-conviction relief, filed in the trial court on

2  May 8, 2013, and the May 22, 2013 trial court minute entry denying and dismissing the

3  notice. (Doc. 1, at 16-49.)

4       Respondents contend that only grounds one and two of Petitioner's habeas petition

5  are properly exhausted, that the remaining grounds should be dismissed as they are not

6  exhausted and are procedurally defaulted, and Petitioner does not demonstrate cause and

7  prejudice or a fundamental miscarriage of justice to excuse the procedural default. (Doc. 14,

8  at 2.)

9  **BACKGROUND**

10  **I.    Trial and Appellate Court Proceedings.**

11       Petitioner was indicted by a Pinal County, State of Arizona Grand Jury on September

12  10, 2009, with thirty-three counts of sexual offenses with minors. (Doc. 14, Exh. F[1], at 1.)

13  He was convicted of 32 of the charges after a jury trial. (Id., at 2.) Petitioner's judgment and

14  sentence were affirmed on direct appeal to the Arizona Court of Appeals in a memorandum

15  decision that recounted some of the facts relating to Petitioner's trial:

16         Bowman was charged with numerous counts of sexual offenses involving his

17  9-year-old stepdaughter K. and his 10-year-old son J. At trial, over Bowman's objection, the court allowed testimony summarizing two stories found on

18  Bowman's computer that described sexual episodes between adults and minors. The court also admitted letters exchanged between Bowman and L.

19  in which Bowman discussed whether he might be offered a plea agreement, and whether he should accept one if offered. The court did not allow Bowman

20  to present evidence that methamphetamine had been found in the master bedroom of his house, nor did it allow him to cross-examine L. about previous

21  accusations of sexual misconduct she had made against her former husband.

22         After an eight-day jury trial, Bowman was convicted of five counts of furnishing obscene materials to a minor, six counts of child molestation, fifteen

23  counts of sexual conduct with a minor twelve years of age or under, three counts of public sexual indecency to a minor, and three counts of sexual

24  exploitation of a minor. He was sentenced to a combination of concurrent and consecutive sentences totaling 682 years.

25  (Exh. A, ¶¶2, 3.)

26       In his direct appeal, Petitioner raised two issues:

27  _____

28       [1]All of the exhibits referenced herein are attached to Respondents' Answer, unless otherwise indicated.

<u>Issue One</u>: The trial court committed reversible error in allowing the introduction of irrelevant and highly inflammatory evidence, i.e., use of summaries of narrative stories, and introduction of Petitioner's letters from jail.  (Exh. J, at 2.)  The appellate court denied the claim, reasoning as follows:

**Admission of Narrative Summaries**

Bowman argues that the trial court committed reversible error in allowing testimony summarizing the two stories found on his computer that described sexual episodes with minors.  He suggests the evidence was not admissible because its prejudicial effect "far outweighed any probative value." [FN1]. The court agreed that the prejudicial effect of admitting the stories in their entirety would have outweighed their probative value, but found that, if the stories were "generalized and described," their relevance outweighed any undue prejudice.  "The trial court has considerable discretion in determining the relevance and admissibility of evidence, and we will not disturb its ruling absent a clear abuse of that discretion."  *State v. Amaya-Ruiz*, 166 Ariz. 12, 167, 800 P.2d 1260, 1275 (1990).

[FN1] Although Bowman argues the evidence was inadmissible under Rule 404(b), Ariz. R. Evid., the court appears to have found the evidence admissible under Rule 404(c).  However, because evidence is not admissible under either rule if its probative value is substantially outweighed by the danger of unfair prejudice, we address Bowman's argument regarding prejudice.  *See* Ariz. R. Evid. 404(c)(1)(C).

Rule 404(c), Ariz. R. Evid., provides in relevant part as follows:
    In a criminal case in which a defendant is charged with having committed a sexual offense, . . . evidence of other crimes, wrongs, or acts may be admitted by the court if relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged. To be admissible, the "evidentiary value" of the evidence must not be "substantially outweighed by danger of unfair prejudice . . . or other factors mentioned in Rule 403." [FN2]  Ariz. R. Evid. 404(c)(1)(C); *see also* Ariz. R. Evid. 403 (relevant evidence excludable if probative value substantially outweighed by danger of unfair prejudice.)

[FN2] Rule 404(c) imposes additional requirements for admissibility. However, Bowman has not challenged the admission of this evidence for any reason other than that it was unduly prejudicial.  Accordingly we do not address whether the other conditions of Rule 404(c) were met.

Bowman contends the stories were so factually dissimilar to his alleged offenses that "there was no probative value to the introduction of these stories."  However, the trial court found the evidence "probative of a character trait giving rise to an aberrant sexual propensity to commit the acts herein charged," *see* Ariz. R. Evid. 404(c), because the stories' topics were "adult/child aberrant sexual behavior."  Both stories described oral and vaginal intercourse between adult males and prepubescent girls, including, in one story, the narrator and his daughter.  Bowman was charged with, inter alia, engaging in oral and vaginal intercourse with his stepdaughter when she was 8 or 9 years old.  Therefore, the trial court did not err in finding the evidence was probative of Bowman's propensity to commit the acts charged. *See State*

*v. Ramsey*, 211 Ariz. 529, ¶¶2, 34, 124 P.3d 756, 759, 767 (App. 2005) (possession of pornographic incestuous stories relevant to defendant's intent and motive to have sexual relationship with minor daughter). The court was in the best position ot assess the danger of unfair prejudice, *see State v. Connor*, 215 Ariz. 553, ¶39, 161 P.3d 596, 607 (App. 2007), and we conclude it did not abuse its discretion in finding that, once it had limited the admission of the stories to their summaries, their probative value outweighed any danger of undue prejudice.

**Admission of Letters**

Bowman argues the letters discussing "his willingness to engage in a plea bargain [were] so prejudicial that the [trial] court's [limiting] instruction could not possibly have cured the prejudicial effect." Because Bowman concedes he did not preserve this issue below, he has forfeited the right to seek relief for all but fundamental error. *See State v. Henderson*, 210 Ariz. 561, ¶19, 11f P.3d 601, 607 (2005). Fundamental error is "'error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial.'" *Id.*, quoting *State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984). Such error "must be clear, egregious, and curable only via a new trial.'" *State v. Bible*, 175 Ariz. 549, 572, 858 P.2d 1152, 1175 (1993), quoting *State v. Gendron*, 168 Ariz. 153, 155, 812 P.2d 626, 628 (1991). To obtain relief on appeal under fundamental error review, "a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice." *Henderson*, 210 Ariz. 561, ¶20, 115 P.3d at 607.

Rule 403, Ariz. R. Evid., provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Balancing the factors contemplated by Rule 403 '"is peculiarly a function of trial courts, not appellate courts,'" and we review a trial court's decision to admit or reject such evidence for an abuse of discretion. *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252 ¶53, 92 P.3d 882, 896 (App. 2004), quoting *Yauch v. S. Pac. Transp. Co.*, 198 Ariz. 394, ¶26, 10 P.3d 1181, 1190 (App. 2000).

In a letter Bowman had written to L., he stated he "[saw] no reason why [he] wouldn't get a plea offer of probation if the State loses the evidence and testimony," and he asked: "If I'm offered a plea, do you think I should take it? If so, what is the maximum time I should accept?" At trial, Bowman argued "the mere fact that he was considering taking a plea may in [the jury's] mind already condemn him to guilt and is effectively a confession on his part." He contends the prejudicial impact of the evidence was demonstrated by a juror's inquiry during the recess after that portion of the letter was read, recounted to the court as follows: "[W]hy are we doing this if he's already talked about pleading guilty?" He also argues the statements about the plea process were not probative of consciousness of guilt, but rather how the "mutual manipulation which went on between husband and wife."

The trial court found the comments in the letters relevant to rebut Bowman's suggestion that L. was a "vindictive victim," and noted his statements to L. were "not part of the plea negotiations." *See* Ariz. R. Crim. P. 17.4(f) (when no agreement reached, plea discussion inadmissible against defendant). The court instructed the jury as follows:

- 5 -

[Y]ou are not to draw any conclusions at this stage from conversations . . . between [L.] and . . . Bowman as to the topics of their conversations. It is still the State's burden to prove beyond a reasonable doubt each element of each offense with their own evidence.

We find no fundamental error in the trial court's determination that the evidence was relevant and that a limiting instruction would clarify its proper use.  *See Amaya-Ruiz*, 166 Ariz. at 167, 800 P.2d at 1275 (court has considerable discretion determining admissibility of evidence).  Moreover, Bowman has not shown that he "could not possibly have received a fair trial" or that any alleged error caused him prejudice; other statements in his letters arguably were more probative of his consciousness of guilt. *See Henderson*, 210 Ariz. 561 ¶¶19, 20, 115 P.3d at 607, quoting *Hunter*, 142 Ariz. at 90, 688 P.2d at 982.  For example, he made such statements as: "I will not reoffend"; "I made a big mistake, a mistake I will regret for the rest of my life;" What I did was wrong"; "what I did" was "sick"' and "I wish I could take it all back." Therefore, we cannot say the court's admission of the evidence was a clear egregious error that would constitute reversible, fundamental error. *See Bible*, 175 Ariz. at 572, 858 P.2d at 1175.

(Exh. A, at 3-7).

Issue Two: The trial court improperly interfered with Petitioner's constitutional right to confront and cross-examine witnesses, i.e., preclusion of drugs relating to Petitioner's wife, and preclusion of cross-examination of Petitioner's wife regarding previous accusations of sexual misconduct.  (Exh. J, at 2.)  The appellate court denied the claim, reasoning as follows:

**Right to Confrontation**

Bowman alleges the trial court violated his constitutional right to confront and cross-examine witnesses under the Sixth Amendment by precluding evidence of methamphetamine found in his and L.'s master bedroom and by precluding cross-examination of L. regarding her previous accusations of sexual misconduct against her former husband.  Bowman argues the evidence should have been permitted to prove L.'s drug use "clouded her mind and made her truthfulness questionable."  Bowman also argues the alleged drug possession and prior allegations would have been probative of L.'s "manipulative and deceptive behavior," which supported his theory that she had "manipulated the children into making their revelations."

"Although the right to cross-examine a witness is vital to the right of confrontation, the trial court reserves discretion to curtail the scope of cross-examination to within 'reasonable' limits." *State v. Doody*, 187 Ariz. 363, 374, 930 P.2d 440, 451 (App. 1996).  We review restrictions on cross-examination "on a case-by-case basis to determine whether the court unduly inhibited the defendant's ability to present information bearing on issues or on the credibility of witnesses." *Id.*  "A trial court's decision to limit cross-examination is reviewed for a clear abuse of discretion." *State v. Cox*, 201 Ariz. 464, ¶5, 37 P.2d 437, 439 (App. 2002).  "[W]e will not disturb the court's ruling absent a clear showing of prejudice," *Doody*, 187 Ariz. at 374, 930 P.2d at 451, and violations of the Confrontation Clause are reviewed for harmless error, *see State v. Armstrong*, 218 Ariz. 451, ¶20, 189 P.3d 378, 385

(2008). "Error is harmless if we can conclude, beyond a reasonable doubt, that the error did not contribute to or affect the jury's verdict." *State v. Davolt*, 207 Ariz. 191, ¶64, 84 P.3d 456, 474 (2004).

The right to confront and cross-examine witnesses is "'limited to the presentation of matters admissible under ordinary evidentiary rules, including relevance.'" *State v. Riggs*, 189 Ariz. 327, 333, 942 P.2d 1159, 1165 (1997), quoting *State v. Dickens*, 187 Ariz. 1, 926 P.2d 468, 481 (1996). The trial court "may reasonably limit cross-examination if concerned that the examination is only 'marginally relevant.'" *Riggs*, 189 Ariz. at 333, 942 P.2d at 1165, quoting *Delaware v Van Arsdall*, 475 U.S. 673, 679 (1986). "As evidence of the witness' condition becomes more remote in time, it has proportionately less bearing on the credibility of the witness." *State v. Fleming*, 117 Ariz. 122, 125-26, 571 P.2d 268, 271-72 (1977). Additionally, the court can restrict cross-examination on subject matter of a personal nature with only minimal probative value and that tends to bring up collateral matters. *State v. Zuck*, 134 Ariz. 509, 513, 658 P.2d 162, 166 (1982).

To the extent the trial court ruled evidence about L.'s alleged drug possession was irrelevant and inadmissible, it did not abuse its discretion. [FN3]. There was no evidence before it showing the drugs belonged to L., that L. actually had used drugs or, as the court noted, that any such use could be "linked to her ability to both perceive and retain and relate information." Bowman conceded he did not know if he could confirm L. had used drugs at the time the allegations of sexual misconduct were made against him, only that "she possessed them, only that they were in the house." The court did not abuse its discretion in determining this speculative information was irrelevant and inadmissible. *See Amaya-Ruiz*, 166 Ariz. at 167, 800 P.2d at 1275 (court has considerable discretion determining relevance).

[FN3] It is unclear whether Bowman actually sought to introduce evidence of L.'s drug use. In referring to possible presentation of such evidence, Bowman's counsel stated, "it is at this point . . . a little early to make a final determination; but it has at least crossed our mind that we will intend to bring in evidence that . . . [L.] was in possession of methamphetamine." The court determined the evidence was irrelevant but told Bowman that "if something changes, let me know." The issue was not raised again.

Nor did the trial court abuse its discretion by refusing to allow Bowman to present evidence L. previously had made allegations of sexual misconduct against her former husband. The court determined the evidence was irrelevant, noting in this case the accusations against Bowman had come from the children, not L., and to permit the evidence would open the door to "a lot of collateral, irrelevant material" necessary to establish whether the allegations were true. *See Zuck*, 134 Ariz. at 513, 658 P.2d at 166 (court can restrict cross-examination into "collateral matters of a personal nature having minor probative value and tending to bring up collateral matters"); *Amaya-Ruiz*, 166 Ariz. at 167, 800 P.2d at 1275 (court has considerable discretion determining relevance). Moreover, excluding this information did not "unduly inhibit[]" Bowman's ability to impeach L.'s credibility. *See Doody*, 187 Ariz. at 374, 930 P.2d at 451 (test "whether the court unduly inhibited the defendant's ability to present information bearing on issues or on the credibility of witnesses"). The court permitted Bowman's counsel to ask L. if she was lying or if she had told the children to lie, and the Confrontation Clause does not confer the right to impeach a witness by referring to specific events not relevant to issues at trial. *See State v. Murguia*, 137 Ariz. 69, 71, 668 P.2d

912, 914 (App. 1983).  Finally, any error in limiting impeachment of L.'s
testimony was harmless in light of the children's testimony and the admissions
contained in Bowman's letters.

(Exh. A, at 7-10.)

Petitioner did not file a petition for review of the appellate court decision in the Arizona Supreme Court.  (Exh. B.)  On April 19, 2011, Petitioner filed a Notice of Post-Conviction Relief ("PCR") in the trial court.  (Exh. C.)  Petitioner was appointed counsel, who, on October 24, 2011, filed a Notice of Completion of Post-Conviction Review advising the court that he had "interviewed the Defendant and trial counsel, . . . ha[d] reviewed the Superior Court file, trial counsel's file, police reports, correspondence from the Defendant, nine (9) trial transcripts and the appellate decision," and had concluded that there were no colorable claims to raise on Petitioner's behalf.  (Exh. D.)

Thereafter, on September 4, 2012, Petitioner filed a *pro se* PCR petition, in which he raised the following issues: (1) denial of access to the courts; (2) ineffective assistance of counsel (several basis); (3) involuntary waiver of right to counsel; (4) prosecutorial misconduct; (5) court error in denying motion for continuance of trial; (6) involuntary waiver of right to testify; and (7) denial of raw materials to support his defense.  (Exh. E.)  The trial court denied post-conviction relief on November 30, 2012.  (Exh. F.)  Petitioner thereafter filed a petition for review to the Arizona Court of Appeals, wherein he requested that the appellate court review the decision of the trial court on all issues raised, except, with respect to his claim of ineffective assistance of counsel, he only asked the court to review his claim that trial counsel was ineffective for not moving for a mistrial.  (Exh. G.)  The Arizona Court of Appeals denied relief on April 15, 2013, in a Memorandum Decision:

Bowman asks that we review "de novo" the following issues on review: (1) he did not waive his right to counsel voluntarily [FN1]; (2) prosecutorial misconduct; (3) the trial court failed to grant his motion to continue the trial date; (4) he did not waive his right to testify voluntarily; (5) he lacked "[a]ccess to the [c]ourts"; and (6) he was denied "[r]aw [m]aterials to [p]repare a [d]efense." Because Bowman could have, but did not raise all of these issues on appeal, the court found they were precluded under Rule 32.2(a)(3). [FN2]

[FN1] Bowman apparently asked to represent himself from January 2010 until the week before the May 2010 trial, when he requested counsel be reappointed to represent him.

- 8 -

[FN2] To the extent Bowman's claim that he did not voluntarily waive his right to testify may be characterized as one of ineffective assistance of counsel, it is not precluded. However, because Bowman has not presented any such argument on review, we do not address it.

On review, Bowman argues the trial court incorrectly found claims one through six precluded because he "failed to competently demonstrate his decision [to not raise those claims] was knowingly, voluntarily or intelligently made, then he did not waive any rights to appeal or post-conviction relief." To the extent Bowman argues these claims are not subject to preclusion because they are of sufficient constitutional magnitude to require his personal waiver, he did not raise this argument below and we thus do not address it. *See State v. Ramirez*, 126 Ariz. 464, 468, 616 P.2d 924, 928 (App. 1980) (appellate court will not consider on review claims not raised below); see also Ariz. R. Crim. P. 32.9(c)(1)(ii) (petition for review must contain "issues which were decided by the trial court and which the defendant wishes to present to the appellate court for review"); *State v. Espinosa*, 200 Ariz. 503 ¶7, 29 P.3d 278, 280 (App. 2001) (preclusion does not apply to claims of sufficient constitutional magnitude absent knowing, voluntary and intelligent waiver). Because claims one through six clearly are precluded, the court did not abuse its discretion by denying relief.

Additionally, although Bowman raised numerous claims of ineffective assistance of counsel in his petition below, on review he appears only to argue that trial counsel should have moved for a mistrial, and that the trial court erroneously stated counsel had in fact done so in its ruling denying post-conviction relief. In its ruling, the court found: "As to Petitioner's argument that his counsel did not request a mistrial when a juror, while riding in an elevator with the other jurors, asked: 'Well why are we doing this if he's [Bowman] already talked about pleading guilty[?'] Petitioner's counsel did, in fact, request a mistrial." Bowman directs us to that portion of the trial transcript where his attorney explained that, because the jury knew Bowman had considered accepting a plea offer, he may have been "condemn[ed]" to guilt in the minds of the jurors. Stating his belief that a limiting instruction would not "cure" this defect, counsel suggested two "appropriate" remedies: "one would be to allow me through my direct examination of my client to explain [to the jury] the plea bargaining process; or, in the alternative, I would be requesting a mistrial." The court, "overruled" counsel's request and explained that it would instead explain the state's burden of proof to the jury.

To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance fell below prevailing professional norms and also that the outcome of the case would have been different but for the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *State v. Nash*, 143 Ariz. 392, 397, 694 P.2d 222, 227 (1985). Even assuming, without deciding, that the trial court did not consider counsel's "request" as a motion for a mistrial and that counsel's failure to so move constituted deficient conduct, Bowman has failed to explain how he was prejudiced thereby. Here, the court assured the parties it would explain the state's burden of proof to the jury to eliminate any possible prejudice resulting from the juror's comment. Nor does Bowman claim the court failed to provide those instructions or that they were in some way deficient. Because Bowman has failed to establish how counsel's conduct, even if deficient, caused him prejudice, the court did not abuse its discretion by finding, albeit for a different reason, that he failed to sustain a claim of ineffective assistance of counsel. *See State v. Oakely*, 180 Ariz. 34, 36, 881 P.2d 366, 368 (App. 1994)

1   (appellate court will affirm when trial court reaches correct result even if not
    for correct reason).
2   (Exh. I.)

3       Thereafter, on April 7, 2014, Petitioner filed his timely habeas petition.

4                                   **DISCUSSION**

5   **I.     Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).**

6       **A.     Claim Cognizability**

7        Respondents assert that Grounds three, four, and five of Petitioner's habeas petition

8   do not assert a federal claim and therefore are not cognizable in habeas review.  The AEDPA

9   provides that the Court can grant habeas relief "only on the ground that [a petitioner] is in

10  custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

11  § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 5 (2010).  "[I]t is not the province of a federal

12  habeas court to reexamine state-court determinations on state-law questions."  Estelle v.

13  McGuire, 502 U.S. 62, 67–68 (1991); see Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993)

14  ("a mere error of state law, one that does not rise to the level of a constitutional violation,

15  may not be corrected on federal habeas."); Lewis v. Jeffers, 497 U.S. 764, 780 (1990)

16  ("federal habeas corpus relief does not lie for errors of state law").  And, a petitioner may not

17  "transform a state law issue into a federal one merely by asserting a violation of due

18  process."  Poland v. Stewart, 169 F.3d 573, 584 (9th Cir. 1999) (quoting Langford v. Day,

19  110 F.3d 1380, 1389 (9th Cir. 1996)); see Engle v. Isaac, 456 U.S. 107, 120-21 (1982)

20  ("While they attempt to cast their first claim in constitutional terms, we believe that this

21  claim does no more than suggest that the instructions at respondents' trials may have violated

22  state law.").   A habeas petition "must allege the petitioner's detention violates the

23  constitution, a federal statute or a treaty."  Franzen v. Brinkman, 877 F.2d 26 (9th Cir. 1989).

24      **B.     Exhaustion and Procedural Default**

25      Respondents assert that Grounds Six through Ten of Petitioner's habeas petition are

26  procedurally defaulted.  Before a federal court may grant habeas corpus relief to a state

27  prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. §

28  2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Coleman v. Thompson, 501

U.S. 722, 731 (1991).  The federal court will not entertain a petition for writ of habeas corpus unless each and every issue has been exhausted.  Pliler v. Ford, 542 U.S. 225, 230 (2004); Rose v. Lundy, 455 U.S. 509, 521-22 (1982).  To properly exhaust state remedies, the prisoner must have afforded the state courts the opportunity to rule upon the merits of his federal constitutional claims by "fairly presenting" them to the state courts in a procedurally appropriate manner.  Castille v. Peoples, 489 U.S. 346 (1989); Baldwin v. Reese, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim.").  A petitioner must describe both the operative facts and the federal legal theory so that the state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing on his constitutional claim.  Id., at 33.  In cases not carrying a life sentence or the death penalty, claims are exhausted once the Arizona Court of Appeals has ruled on them.  Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999).

Where a prisoner fails to "fairly present" a claim to the state courts in a procedurally appropriate manner, his claims are procedurally defaulted.  Ylst v. Nunnemaker, 501 U.S. 797, 802-05 (1991); Coleman, 501 U.S. at 731-32. There are two types of procedural default.

First, a state court may have applied a procedural bar when the prisoner attempted to raise the claim in state court.  Nunnemaker, 501 U.S. at 802-05.  For example, a habeas petitioner may be barred from raising federal claims that he failed to preserve in state court by making contemporaneous objections at trial or by raising the claim on direct appeal or post-conviction review.  Bonin v. Calderon, 59 F.3d 815, 841-42 (9th Cir. 1995)(stating that failure to raise contemporaneous objection at trial to an alleged violation of federal rights constitutes a procedural default of that issue); Thomas v. Lewis, 945 F.2d 1119, 1121 (9th Cir. 1991)(finding procedural default where the Arizona Court of Appeals held that petitioner had waived his claims by failing to raise them on direct appeal or in his first petition for post-conviction review.)  If the state court found a procedural bar but also addressed the merits of the underlying federal claim, the "alternative" ruling does not vitiate the independent state

1    procedural bar.  Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Carriger v. Lewis, 971 F.2d

2    329, 333 (9th Cir. 1992) (en banc court held that a state court may alternatively deny relief

3    on the merits of a federal constitutional claim even after dismissing the claim on procedural

4    grounds).

5          A higher court's subsequent summary denial of review affirms the lower court's

6    application of a procedural bar.  Nunnemaker, 501 U.S. at 803.  In order to "constitute

7    adequate and independent grounds sufficient to support a finding of procedural default, a

8    state rule must be clear, consistently applied, and well-established at the time of the

9    petitioner's default."  Wells v. Maass, 28 F.3d 1005, 1010 (9th Cir. 1994).  Arizona courts

10   have consistently applied their procedural default rules.  Stewart v. Smith, 536 U.S. 856, 860

11   (2002)(holding that Arizona Rule of Criminal Procedure 32.2(a) is an adequate and

12   independent procedural bar); Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998)(rejecting

13   the argument that Arizona courts have not "strictly or regularly followed" Rule 32); Carriger

14   v. Lewis, 971 F.2d 329, 333 (9th Cir. 1992)(rejecting the assertion that Arizona courts'

15   application of procedural default rules had been "unpredictable and irregular.").

16         In the second procedural default scenario, the state prisoner may not have presented

17   the claim to the state courts, but pursuant to the state courts' procedural rules, a return to state

18   court would be "futile."  Teague v. Lane, 489 U.S. 288, 297-99 (1989).  Generally, any claim

19   not previously presented to the Arizona courts is procedurally barred from federal review

20   because any attempt to return to state court to properly exhaust a current habeas claim would

21   be "futile." Ariz. R. Crim. P. 32.1, 32.2(a) & (b); Beaty v. Stewart, 303 F.3d 975, 987 (9th

22   Cir. 2002); Ariz. R. Crim. P. 32.1(a)(3) (relief is precluded for claims waived at trial, on

23   appeal, or in any previous collateral proceeding); Ariz. R. Crim. P. 32.4 (stating that in a

24   Rule 32 of-right proceeding, notice of post-conviction relief must be filed within 90 days

25   after entry of judgment and sentence or within 30 days appellate mandate); Ariz. R. Crim.

26   P. 32.9 (stating that petition for review must be filed within thirty days of trial court's

27   decision).  A state post-conviction action is futile where it is time barred.  Beaty, 303 F.3d

28   at 987; Moreno v. Gonzalez, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness

1  under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-

2  conviction relief, distinct from preclusion under Rule 32.2(a)).

3      In either case of procedural default, federal review of the claim is barred absent a

4  showing of "cause and prejudice" or a "fundamental miscarriage of justice." Dretke v.

5  Haley, 541 U.S. 386, 393-94 (2004); .  To establish cause, a petitioner must establish that

6  "some objective factor external to the defense impeded [his] efforts to comply with the

7  State's procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986)  The following

8  objective factors may constitute cause: (1) interference by state officials, (2) a showing that

9  the factual or legal basis for a claim was not reasonably available, or (3) constitutionally

10  ineffective assistance of counsel.  Id.  To establish prejudice, a prisoner must demonstrate

11  that the alleged constitutional violation "worked to his actual and substantial disadvantage,

12  infecting his entire trial with error of constitutional dimension." United States v. Frady, 456

13  U.S. 152, 170 (1982) (emphasis omitted).  Where petitioner fails to establish cause, the court

14  need not reach the prejudice prong.

15      To establish a "fundamental miscarriage of justice" resulting in the conviction of one

16  who is actually innocent, a state prisoner must establish that it is more likely than not that no

17  reasonable juror would have found him guilty beyond a reasonable doubt in light of new

18  evidence.  Schlup v. Delo, 513 U.S. 298, 327 (1995); 28 U.S.C. § 2254(c)(2)(B).

19      **C.   Merits Analysis**

20      Respondents assert that Petitioner's Grounds One and Two of his habeas petition

21  should be denied on their merits.  In reviewing a cognizable claim under the AEDPA, a

22  federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated

23  on the merits in State court proceedings" unless the State court decision was (1) contrary to,

24  or an unreasonable application of, clearly established federal law as determined by the United

25  States Supreme Court; or (2) based on an unreasonable determination of the facts in light of

26  the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d); see Williams v.

27  Taylor, 529 U.S. 362, 412-413 (2000) (O'Connor, J., concurring and delivering the opinion

28  of the Court as to the AEDPA standard of review).  "When applying these standards, the

1  federal court should review the 'last reasoned decision' by a state court ...." Robinson v.

2  Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

3      A state court's decision is "contrary to" clearly established precedent if (1) "the state

4  court applies a rule that contradicts the governing law set forth in [Supreme Court] cases,"

5  or (2) "if the state court confronts a set of facts that are materially indistinguishable from a

6  decision of [the Supreme Court] and nevertheless arrives at a result different from [its]

7  precedent." Taylor, 529 U.S. at 405-06.   "A state court's decision can involve an

8  'unreasonable application' of Federal law if it either (1) correctly identifies the governing rule

9  but then applies it to a new set of facts in a way that is objectively unreasonable, or (2)

10  extends or fails to extend a clearly established legal principle to a new context in a way that

11  is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002)

12  (citation omitted).   This Court must "presume the correctness of [the] state courts' factual

13  findings" and a petitioner has the burden to "rebut this presumption with 'clear and

14  convincing evidence.'" Schriro v. Landrigan, 550 U.S. 465, 473-474 (2007) (quoting 28

15  U.S.C. §2254(e)(1)).

16      **D.    The Claims**

17      In Ground One, Petitioner claims that he was denied his right to confrontation under

18  the Sixth Amendment when the trial court precluded him from examining his wife Lindsey

19  regarding allegations that she had previously made against her first husband of sexual

20  conduct with a minor.   Petitioner exhausted this claim by asserting a federal law basis and

21  raising it on appeal, and thus the claim will be analyzed on its merits.

22      "The Sixth Amendment to the Constitution guarantees the right of an accused in a

23  criminal prosecution to be confronted with the witnesses against him." Davis v. Alaska, 415

24  U.S. 308, 315 (1974) (internal quotations omitted).  The right to confront witnesses includes

25  the right to cross-examine them, but "the Confrontation Clause guarantees an Opportunity

26  for effective cross-examination, not cross-examination that is effective in whatever way, and

27  to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985).

28  Thus, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to

1   impose other things, harassment, prejudice, confusion of the issues, the witness' safety, or

2   interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475

3   U.S. 673, 679 (1986).

4          During trial, Petitioner contended that Lindsey had in the past created a flyer "in

5   which she accused another former husband of [acts similar]" to the allegations against

6   Petitioner.  (Exh. L, at 8.)  The state responded that the flyer "was created but never

7   disseminated, never posted. . . . [s]aid a 'dead beat dad' and related to the lack of child

8   support, . . . and at one point there was a reference to it of – either had sex with a 15 year old

9   girl or engaged in sexual contact with a minor, ..."  (Id., at 9.)  The trial court denied

10  Petitioner's request to admit the evidence, noting that it was the children, not Lindsey, who

11  made the accusations, and that, "one of the problems obviously is – whether the allegations

12  made were true or false, that's when you start opening the collateral barrel. . . . it's simply

13  irrelevant. . . . [i]t opens the door to a lot of collateral, irrelevant materials." (Id., at 12.) The

14  Arizona Court of Appeals, as repeated above, affirmed the trial court's ruling:

15          Nor did the trial court abuse its discretion by refusing to allow Bowman to
        present evidence L. previously had made allegations of sexual misconduct
16      against her former husband. The court determined the evidence was irrelevant,
        noting in this case the accusations against Bowman had come from the
17      children, not L., and to permit the evidence would open the door to "a lot of
        collateral, irrelevant material" necessary to establish whether the allegations
18      were true.  See Zuck, 134 Ariz. at 513, 658 P.2d at 166 (court can restrict
        cross-examination into "collateral matters of a personal nature having minor
19      probative value and tending to bring up collateral matters"); Amaya-Ruiz, 166
        Ariz. at 167, 800 P.2d at 1275 (court has considerable discretion determining
20      relevance).  Moreover, excluding this information did not "unduly inhibit[]"
        Bowman's ability to impeach L.'s credibility.  See Doody, 187 Ariz. at 374,
21      930 P.2d at 451 (test "whether the court unduly inhibited the defendant's
        ability to present information bearing on issues or on the credibility of
22      witnesses").  The court permitted Bowman's counsel to ask L. if she was lying
        or if she had told the children to lie, and the Confrontation Clause does not
23      confer the right to impeach a witness by referring to specific events not
        relevant to issues at trial.  See State v. Murguia, 137 Ariz. 69, 71, 668 P.2d
24      912, 914 (App. 1983).  Finally, any error in limiting impeachment of L.'s
        testimony was harmless in light of the children's testimony and the **admissions**
25      contained in Bowman's letters.

    (Exh. A, ¶16) (emphasis added).

26          The "admissions" contained in Petitioner's letters referred to by the Court included

27  "such statements as: 'I will not reoffend'; 'I made a big mistake, a mistake I will regret for

28  the rest of my life'; 'What I did was wrong'; 'what I did' was 'sick'; and 'I wish I could take

1    it all back.'" (Exh. A, ¶11.)  The appellate court's ruling affirming the trial court's decision

2    was not contrary to any clearly established law as defined by the United States Supreme

3    Court, as it was based upon a proper evidentiary consideration - that of confusion of the

4    issues and marginal relevance to the credibility of the witness.  In any event, as found by the

5    appellate court, any error was harmless in view of the other evidence of Petitioner's guilt.

6    See, Van Arsdall, 475 U.S. at 684 (1986) (a violation of the Confrontation Clause is subject

7    to harmless error analysis).  If the error did not have a "substantial and injurious effect or

8    influence in determining the jury's verdict," Petitioner is not entitled to habeas relief.  Brecht

9    v. Abrahamson, 507 U.S. 619, 637 (1993).  Also, Petitioner does not demonstrate, and the

10   record does not establish that the ruling involved an unreasonable interpretation of the facts

11   as developed by the trial court record.

12        In Ground Two, Petitioner asserts that he was denied his right to confrontation under

13   the Sixth Amendment when he was precluded from cross-examining his wife Lindsey

14   regarding her possession of methamphetamine.  During trial, Petitioner's counsel stated that

15   "it had crossed our mind that we will intend to bring in evidence that during the time that

16   these allegations occurred, that Mrs. Bowman was in possession of methamphetamine.  They

17   were actually in her - - in the master bedroom.  We're going to say that, if this goes forward,

18   it would be our intention to say that her use of drugs has actually clouded her mind and her

19   ability to tell the truth and her veracity can be brought into question through her use of,

20   specifically, methamphetamine." (Exh. K, at 7.)  The trial court then asked counsel if he had

21   proof that Mrs. Bowman had been using drugs at the time of the events surrounding the

22   accusations against Petitioner.  (Id.)  Petitioner's counsel responded, "when the police

23   officers did a search warrant, they located methamphetamine in the house.  They were field

24   tested, they were positive for methamphetamine.  At this juncture, I believe it would be the

25   defense's intention to lead the jury to believe that those were hers.  I don't believe there is

26   any firm evidence either way whose it is, but we believe we should be entitled to, at least,

27   the presumption or the ability to convince them that the drugs were hers, that they were in

28

1    the bedroom." (Id., at 7-8.)  The trial court ruled that the evidence was irrelevant and denied

2    its admission.  (Id., at 9.)

3         The court of appeals expressed doubt that Petitioner "actually sought to introduce

4    evidence of L's drug use."  (Exh. A, ¶15, n. 3.)  In upholding the trial court's decision to

5    disallow the evidence, the court noted that "[t]here was no evidence before [the trial court]

6    showing the drugs belonged to L., that L. actually had used drugs or, as the court noted, that

7    any such use could be 'linked to her ability to both perceive and retain and relate

8    information.' Appellant conceded he did not know if he could confirm L. had used drugs at

9    the time the allegations of sexual misconduct were made against him, only that 'she

10   possessed them, only that they were in the house.'" (Exh. A, ¶15.)

11        The appellate court's ruling affirming the trial court's decision was not contrary to any

12   clearly established law as defined by the United States Supreme Court, as it was based upon

13   a proper evidentiary consideration - considering that Petitioner could not prove Lindsey's use

14   of the drugs (and it was even unclear if counsel sought to introduce the evidence), and

15   consequently that the drugs could have affected her credibility during the time the

16   accusations against Petitioner were made, the evidence was not relevant and Petitioner was

17   not deprived of his right to Confrontation under the Sixth Amendment.  Also, Petitioner does

18   not demonstrate, and the record does not establish that the state court's rulings involved an

19   unreasonable interpretation of the facts as developed by the trial court record.

20        In Grounds Three and Four, Petitioner contends that he was deprived of his right to

21   due process of law when the trial court admitted into evidence letters that Petitioner had

22   written his wife from jail in which he discussed consideration of a plea agreement, and

23   summaries of narrative stories found on his computer describing sexual encounters between

24   adults and children.  On appeal, Petitioner only challenged the admissibility of this evidence

25   under state evidentiary rules, arguing that the evidence was not admissible under Ariz. R.

26   Evid. 404(b) (governing admission of "other crimes, wrongs, or acts") and 403 (governing

27   exclusion of relevant evidence for prejudice, confusion, waste of time or other reasons"), and

28   the Arizona Court of Appeals denied the claims on state law grounds, to include Ariz. R.

Evid. 404(c) (governing character evidence in sexual misconduct cases).  Petitioner's passing reference to a violation of his "due process" rights now in his habeas petition is not sufficient to raise a federal claim.  Because it would be futile for Petitioner to now return to state court to properly assert a federal claim, Grounds Three and Four of Petitioner's habeas petition are procedurally defaulted.

In Petitioner's Response to Respondents' Answer to Petition for Habeas Corpus, Petitioner acknowledges  that he did not properly exhaust several of his claims, explaining that "he has no expertise or training in the appeal or trial process." (Doc. 17, at 4.)  Petitioner also claims that his appellate counsel "either willfully neglected to properly raise all of his claims, . . . or was simply ineffective."  (Id., at 5.)  Additionally, he asserts that each ground raised in his habeas petition, "both separately and cumulatively resulted in a fundamental miscarriage of justice." (Id.)  Petitioner does not state a sufficient basis for a finding of cause for his failure to properly exhaust these claims.  He did not raise a claim of ineffective assistance of appellate counsel in his first PCR petition, and offers no explanation for having failed to do so, other than his "lack of knowledge and training."  A prisoner's *pro se* status, illiteracy, ignorance of the State's procedural rules or lack of legal training do not constitute legally cognizable "cause" for a petitioner's failure to fairly present his claim.  Hughes v. Idaho State Board of Corrections, 800 F.2d 905, 908-10 (9th Cir. 1986); Schneider v. McDaniel, 674 F.3d 1144, 1153 (9th Cir. 2012).  Additionally, any claim by Petitioner that he was unable to properly present his claims because of a lack of legal training is belied by the knowledge of the law and procedure Petitioner demonstrated in his state court *pro se* pleadings and habeas petition, as well as the fact that Petitioner represented himself for some time period before his trial.  Regarding the "miscarriage of justice," the Supreme Court has made clear that a fundamental miscarriage of justice exists when a Constitutional violation has resulted in the conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96.  Petitioner falls far short of meeting the burden of showing a constitutional violation, or that he is actually innocent.

In Ground Five, Petitioner claims he was denied his right to due process of law when he was denied a trial continuance.  Although Petitioner raised a claim that he was unfairly denied a trial continuance in his first PCR petition and in his petition for review, Petitioner failed to assert a federal-law basis for the claim, and therefore it is unexhausted, and procedurally defaulted, as it would be futile for him to return to state court to properly exhaust the claim.  In addition, the trial court found the claim precluded for not having been raised on appeal, and the court of appeals affirmed.  Thus, the state court's judgment rests on an independent and adequate state procedural bar, precluding habeas review.  As set forth above, Petitioner does not establish cause and prejudice, or that a fundamental miscarriage of justice occurred.

In Grounds Six through Ten, Petitioner asserts that he was denied effective assistance of counsel, for the reason that (1) he was forced to chose between having ineffective counsel or no counsel; (2) when his trial counsel failed to introduce exculpatory statements made by one of the victims; (3) when his trial counsel did not present a defense; (4) when his trial counsel in opening statement asked the jury to find Petitioner guilty; and (5) when his trial counsel failed to introduce purportedly exculpatory letters written to Petition by his wife Lindsey.  Although Petitioner raised all of these grounds in his first PCR petition, he failed to assert them in his petition for review to the Arizona Court of Appeals.  In fact, the Court of Appeals made note of the omission, stating that "although [Petitioner] raised numerous claims of ineffective assistance of counsel in his petition below, on review he appears only to argue that trial counsel should have moved for a mistrial."  (Exh. H, at ¶4.)  Because Petitioner did not present these PCR claims for review by the Arizona Court of Appeals, his claims are unexhausted, and procedurally defaulted as it would be futile to return now to the state court to present the claims, as they would be time barred.  As set forth above, Petitioner does not establish cause and prejudice, or that a fundamental miscarriage of justice occurred.

**CONCLUSION**

For the foregoing reasons, this Court finds that Petitioner's Grounds One and Two of Petitioner's habeas petition lack merit, and that the remaining Grounds, Three through Ten,

are procedurally defaulted, and Petitioner has not established cause to excuse the default, or that a fundamental miscarriage of justice occurred.  Wherefore, this Court will recommend that Petitioner's Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because dismissal of the habeas petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable, and Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.  The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen days within which to file a response to the objections.  Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review.  See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  See Rule 72, Federal Rules of Civil Procedure.

1

**IT IS FURTHER ORDERED** that Petitioner's Motion for Ruling, and Motion for

2

Status (Docs. 28, 29), be denied as moot.

3

DATED this 22nd day of June, 2015.

4

5

6

Michelle H. Burns

United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28